Morning, my name is Casey Nye. I'm from the law firm Waterfall Conimitas in Tucson, Arizona, and I represent Farwest Pump Company, which is the debtor in the Chapter 11 below and the appellant for this court. As you know, the client's appealing the Bankruptcy Court's decision to confirm the official Committee of Unsecured Creditors plan of liquidation and deny confirmation of my topics more or less in the following order, if possible. First, address what we consider to be the legal error that we believe is subject to de novo review regarding how the Bankruptcy Court confirmed the committee's plan. Then step into some of the factual findings, some of which affect both plans but primarily relate to my client's plan of reorganization, and take them in particular order. We've got questions about the $350,000 finding that the Chapter 7 trustee would achieve on the crime insurance, the finding that management was not in the best interest of creditors, and the finding of new value. Addressing the first issue, I believe it's a pretty straightforward one. The Bankruptcy Court applied the wrong legal standards to the best interest of creditors test as to the committee's plan of reorganization. As a preliminary matter, that test was implicated by the no vote, the rejection vote of David Leonard, who both had a secured claim, which was classified into Class 7 of the committee's plan, and a substantial unsecured claim. In addition, there were several other creditors that rejected the committee's plan as unsecured creditors as well. But we read the statute, once the best interest of creditors test is implicated, the Bankruptcy Court must make findings of that. And what the Bankruptcy Court did in this case, rather, was say basically, well, this is a reorganization, this is a liquidation, so I don't need to undertake those specific findings. And also troublingly, after finding that the creditors plan did not satisfy the best interest of creditors test, even acknowledged that the debtors plan was perhaps more likely to achieve a larger return to unsecured creditors. Can I interrupt you for a second, because there's an awful lot in this, and I want to be very respectful of all the points I think you're making. First of all, I want to indicate that, at least on paper, it looked like the debtors plan could have returned more to the unsecureds than the committees. That's neither here nor there in A7, in my view. I mean, I think if you get to 1129C, maybe you've got some arguments there, but whether one plan is better than the other, you know, they both theoretically have to satisfy 1129A7, right? Correct, your client's plan did not satisfy it. Right, and part of that's, I mean, that's largely based on her determination that, you know, call it whatever you want to call it, rough justice, whatever, those insurance proceeds are going to generate about 350. So is your first problem with, is the first problem with that piece of this? Well, I attacked it in this particular order, that is the largest actual problem that we have with the judge's decision, but the reason I attacked the order is, my view is that it's a legal error to just not even go through the steps. So it's not as though Judge Wintory, of how the committee's plan over survived that, performed any analysis just to estimate rough justice or otherwise, what the committee's plan would yield. Can I ask you, you know, this is, this is, these two paragraphs, I think your opposing counsel, this is going to be the focus of our discussion for a lot of the morning. In the one paragraph, though, she does the 1129A7 analysis as to your client's plan, and she does a searching analysis, and she comes up with 40% versus 48 and change, right? Yes, sure. And then, and she says it fails the 1129A7 test. Then in the next paragraph, we have, it's kind of confusing. I mean, you're saying she didn't do the analysis, but she'd done a liquidation analysis, and she, to my mind, one fair way of reading what she says is, a liquidation is a liquidation. There was evidence in the 1129A7, which is not far off the mark from her 48, that she found on her own. Your number would still be presumably 40%, correct? I mean, she didn't have to redo the analysis. Well, with respect to my client's plan, and this isn't the factual issue I'd necessarily focus on under the standard, but the, what she applied to my client's plan was the bare minimum that my client promised in terms of minimum distributions to creditors, as opposed to, and the biggest difference in this case from a factual point of view between the two plans was my client's plan had the principals contributing $140,000 capital, and then probably best if we turn to the factual issue as to the crime insurance that I'd like to address. I just want to, I want you to focus on that paragraph for just a moment. I know, and I've read your brief, and I understand your point on that. You can certainly argue it. But, is it not fair to say that what she was saying in that paragraph was, you know, I've done the searching analysis of the Chapter 7 trustees' liquidation. I don't think the committee would do any worse. So my number would be 48, and yeah, it's possible, and you know, who knows? The Respectfully, Your Honor, what I would suggest is that the hypothetical liquidation is a creature of the statute, and there are a number, and basically, if that is the rule, then I don't, I don't understand how that could be the rule, because if that's the rule, then how would, would basically be a path that I haven't seen in the statute or in any other cases, where on even applying the best interest of creditors test liquidating plans. I, I just, the rule should apply to liquidating under 1129, to liquidating plans, or, or, or other plans. Can I, can I play it back and see if I have it right? Yes, Your Honor. You're telling us it's a legal error not even to engage factually the question, whether the committee's plan would have satisfied A7, merely because it says it's a liquidating plan. Yes. And that's, I mean, that, that is a, you know, arguably a superficial, I think Judge Taylor's read is, is a little, is deeper than that, but that's the clear, quick meaning of the language that the judge used. Right. That's a quick meaning, it's close enough, it's a liquidation. She was under some obligation to make a factual finding about the numbers. I mean, had she made one that said, look, this is all kind of rough justice, and there's not much difference between 48 and 47.7, that would have been a different question and it's one we could have argued about. That would have been a factual question. That would have been, in my view, that would, that would have moved this from a de novo review to a, a clearly erroneous review. And if I can just anticipate where your argument's going, if the judge is going to take it on herself, which I don't think is necessarily inappropriate, but she's going to take it on herself to come up with numbers that are, you know, her sense of what the right number is, given both parties' positions. If she's going to come up with a number that neither party came up with, she really has a greater, arguably an even greater duty to justify it on a factual basis. Is that, is that kind of where I assume? That's the direction I would go, yes. Okay, I get it. All right. But at the same time, I mean, would you, would you agree with Judge Taylor? I think she's right that it's right there in the record that there's a, you know, there's, there's a number you can get to for the committee's plan and it's awful darn close to the number that she's come up with for the hypothetical. Perhaps, I mean, it's not a given to me that Chapter 7 liquidation would have the same administrative burden that Chapter 11, Chapter 11 liquidation. Did anybody make that argument, counsel? I mean, the judge seemed to think everybody was in agreement on what the sort of the cost of the liquidation in the 7 would be. The 7, but in the 11, we don't have, we don't have that. It's completely different in the 11. Okay. Okay. Fair enough. Okay. Now, turning to a key factual question, in the judge's decision at page 23 of 36, there's a footnote that addresses very specifically her basis for finding the $350,000 value. And she cites very specifically to a number of factors. I grant that. And she cites very specifically to 144 specific parts of the trial transcript. What I would submit to your honors is that that analysis completely omits the deposition testimony that was admitted in lieu of direct testimony from David Leonard. Now, David Leonard, you'll recall, was the lawyer that represented the debtor in the state court. Can I make sure I've got the right framing here? This is a factual question. You're going to tell me this was clear error. This is clear error. Yes. Okay. So, because his testimony was specifically that without the principal's active participation in obtaining the crime insurance, her active knowledge and participation in accessing the records, it would be nearly impossible for even him who'd been working on this case since 2015, since at least 2015, to be able to present adequate proofs of loss. And he testifies that in his estimation, the result would be zero. Counsel, wasn't part of the analysis that he wasn't a forensic accountant? So, how did he know what it would take to do that? So, that's question number one. And question number two is, you know, as judges, we've done a lot of these cases. So, we do bring some experience to it. Is it unreasonable for her to assume that a forensic accountant might just be able to figure that out? He does testify very specifically about that. So, the context here is that he in fact, personally submitted claims. And generally, even a layperson is able to testify about their estimation of the value of their collateral, if you will. And what he estimated... But that's because they own it. He doesn't own this claim. This is his collateral, and he was assigned these claims. Well, that makes it persuasive, right? Well, but the issue I have, partly, is that the judge makes no finding that it's not credible. Mr. Smith does say, hey, it could be this, it could be that. She makes no actual finding with respect to that. And there is no reference, while there's extensive reference to the record, there's no reference anywhere in the record to that transcript. I see I'm running up against my time here. I was going to say, you're at your 30-minute wait, so... Thank you. All right. Thank you. All right. Mr. Smith. Hey, please, the court. John Smith on behalf of the appellee, the Creditors Committee. Good morning, Judge Lafferty, Judge Taylor. Thank you for having our oral argument, and please give our best to Judge Brand. Today, we simply ask that you affirm Judge Winery's opinion, confirming the Creditors Committee's plan and denying confirmation to the debtors' plan. I want to jump to the last issue you were just discussing with Mr. Nye, because I think it's actually easily addressed, and then we'll jump back to probably the meat and potatoes, if you will, of the liquidation analysis. So, Mr. Nye is arguing that, essentially, Judge Winery did not take into consideration the testimony of David Leonard, that Shanna Vought, the principal, would collect more of the crime insurance proceeds. I want to point out a couple factors. The court found, specifically and extensively, that Shanna Vought was grossly incompetent, that she committed managerial fraud, that she had failure of oversight, she failed to file timely reports, she failed to file accurate operating reports, she violated two direct orders of the court, and I'll get into that more, but those were big orders. She failed to collect the accounts receivable from herself, her related entities she set up with her husband, that the court found were set up to avoid creditors' collections. So, Judge Winery made extensive findings on the credibility of Shanna Vought. Now, the judge also found Shanna Vought collected $49,000 on those secure proceeds over the course of five years. The expert testimony of the committee's expert, our expert, was she thought she could do better than that. I think most people think they could do better than that. And then, as I briefed, and it's in the brief, David Leonard's not an expert, nor a forensic expert, as I think Judge Taylor pointed out, and we argue that well there. I think I've addressed that issue. The court did weigh the credibility of Shanna Vought on her ability to file. There are two issues here, I think, and I'm hearing what you're, on the first one, what you're saying is, look, there was another side to the story. The judge implicitly believed that side of the story, and on a factual matter, you know, if there is a basis in the record, we're not going to, we're not supposed to second guess what a bankruptcy judge does at confirmation. And that's, I mean, clear error or something entirely different. So that, I understand that part. You know, part of the problem here is she did what everybody does at confirmation, which is kind of some rough calculations, and came up with a number of 350, and then that sort of leads to some further problems. So I'm not suggesting that, you know, this would be the first time a judge said, I've got to do this calculation myself, and here's what it is. And I'm not suggesting that I think I'm hearing clear error here, because I'm not quite there yet. But she does come up with a very specific number that has the effect of being, of creating a problem for the debtor, and then what looks like a problem for the committee, but she doesn't address it as a problem for the committee. Not to be coy here, I don't think anyone questioned King Solomon when he split the baby. But Judge Winery split the baby. If we all lived back then, we could have argued with him, but he's not here to argue. Fair enough, Judge Lafferty. But, you know, it does look arbitrary, but what you have to look back is the factual record, and why this occurred. The confirmation was supposed to occur in 2018. It got delayed for numerous reasons, and liquidation analysis was very outdated. So Judge Winery took it on herself. Yeah, yeah. And not that we're pointing out wrong or right, but someone had to make the decision, and what she did was a five-and-a-half page of 36 pages, detailed decision. But if she's doing all that work, counsel, why doesn't she also have to apply it under an A7 standard to the committee's plan? And that, Your Honor, I think is the meat and potatoes of this argument. So does she apply it under the best interest test? So as the appellant points out, she does five-and-a-half pages of argument, and then she does two quick paragraphs. And I want to address two points that were raised. First, the analysis on the debtor's plan she gives, where Judge Taylor points out, she says, okay, the debtor comes up with 40%. We have this arbitrary 48% number. Now, that's based on the best showing of the debtor, i.e., that's just their plan language, that they get to 40%. That's not taking into account all the testimony and exhibits that were presented that Judge Winery reviewed to get to 40%. That's their best day, and they only get 40%. So then you get to 48%, and is that arbitrary? But that was an analysis done under the problem here is those two paragraphs. You know, 40%, let's assume that's rock solid. Let's assume we buy that. That's a solid number, not a problem for you. And let's assume that the 48% for the Chapter 7 trustee liquidation is rock solid, and that's not a problem for you. There is no separate OCC plan analysis, at least that I can find, and she has that sentence, which is, and it might be less than 40% necessarily, which is necessarily less than the 48% she's just found with the Chapter 7 trustee. Isn't that an 1120-987 problem as she wrote it? I'm a big fan of Judge Winery, but let me address this. Could have been more clear, I will agree, but let's really look at what's behind it. And I think it's funny when you said this, Judge Taylor, early on, I have it in my notes. What Judge Winery is saying is a liquidation is a liquidation is a liquidation. Now let's break that out. So she comes up with the 48% number. How she gets that I think we've got to look under, and I don't mean to do this, but we look under, it is not a de novo review. So do you have a strong conviction she was wrong? It is a factual finding. Emory, Arnold, and Baker Farms were clear on this. I disagree with counsel that there is a de novo analysis to this, but let's talk about it. So let's talk about the practical implications. So she's saying, Judge Winery is saying, this liquidation is a liquidation. So let's look at it. What are the duties of a Chapter 7 trustee and a Chapter 11 trustee? They're more or less the same under 11 U.S.C. 704 and 1106. Now, the most important point, which hasn't been fleshed out, and I have to raise before getting to this, is there is never any evidence presented by the debtor ever that they would get more in a Chapter 7 analysis. They never present any evidence that a Chapter 7 trustee would recover more than me, John Smith, the Chapter 11 trustee. There's no evidence. Now, the only difference in this whole thing is one of process, the procedure, and orderly liquidation versus the hypothetical fire sale litigation. This panel, I think, would agree with me. A Chapter 7 trustee has a duty to maximize value for the estate. There's case law in the Southern District of New York. There's case law all around that says a Chapter 7 trustee can do an orderly liquidation if it maximizes the value of the estate. So what's the difference between my orderly liquidation and what a Chapter 7 trustee is? Let me stop you. We don't know because she didn't ask the question. Okay? That's our problem. And by the way, I'm going to connect the dots for you on one other thing. When she says implicit, well, maybe the committee does not as well as the debtor, I think that you're right. That's a little apples and oranges in terms of, you know, how critical she's being about one plan versus another. So that didn't stop me in my tracks necessarily. But I am stuck with, you know, the difference between findings and lore. I mean, I'm not disagreeing generally with what you're saying, that Chapter 7 trustees do liquidations and plans do liquidations, and they kind of look the same. But, I mean, doesn't A7 require her to do some minimal work to show why this hits A7 or not? Judge Lafty, I think we're getting caught up too much in paragraph 1 and 2 that describes, you know, generally, you know, here it is straight out of the plan. Although the committee's plan may generate less, it necessarily provides holders of claims an interest for liquidation value. That sentence where she says that Mr. Nye states is all the findings is based on the five and a half pages of liquidation analysis, plus the testimony of our expert, Ms. Obelsky, at trial that tested extensively that although she didn't submit a liquidation report, she testified about liquidation. We have George Cunningham's expert report that Judge Winery took into consideration when she wrote this summarizing paragraph. This isn't the extent of her findings. The whole 36-page opinion that our trial judges spend the time and do is based on this. So let me, let me. I'm sorry. Judge Hillary, go ahead. No, you go ahead. I'm troubled with, again, the, I don't know why she wrote it this way. And I don't think you can say it isn't sort of mind bending to say A is greater than B, then C is greater than, you know, B, but might be less than A. You know, there's a flaw in the logic there. If we line up the findings, they just don't mesh. And I don't know, you know, what we do with that. That's what we're really searching for here. So you're suggesting that beyond that summary finding, what would you have us look at to come to the conclusion that it must, we must disregard the confusing language and infer that, I don't know what we infer, Notwithstanding that she said it might be something less than something she already said would bring in less than a Chapter 7 liquidation. That's the problem. Okay. I don't have a specific record, but you also have to take the thing as a whole. So what did Judge Winery do? She said there's 700,000 remaining, more or less, and the committee's evidence isn't very great on liquidation value, and the debtor's evidence is so outdated and not very great on liquidation value. Eventually, I'm going to opine, and all those footnotes that Judge Winery puts in related to her liquidation schedule is the basis that she uses. And she basically says, you know, I heard the testimony from X and Y, and I discounted this much, and I give it this value. I looked at the debtor's plan, I looked at the committee's plan, and I give it this value. It's based on her experience from sitting in trial, and she puts it pen to paper, and this is what we get. And I think ultimately—sorry, Your Honor. No, I just said, I get all that. How do we disregard the statement that you might get less than under the debtor's plan, when the debtor's plan was already found to be less than a Chapter 7 liquidation? It's a real—you know, help me. And I will gladly help you. You know, the language is not the best, but I think what Judge Winery is really saying there is the debtor's plan, as I stated in the beginning, gives us their greatest thing they can do. And remember, that is 140,000 new value contribution, which if you go to the record, never came in. So they lose on feasibility, which I didn't address. But—sorry, I lost train of thought. How do we address—that is just language that their best, most optimistic case under their plan is only 40%. And the committee's plan may generate less, is what Judge Winery is saying, if their plan came to fruition. Their plan will never come to fruition. And a judge addresses that. Why will their plan never come to fruition? Four specific findings. They have—the leases terminate, which is the majority of their income. And therefore, they have no alternate source. So it fails. This is under her feasibility analysis, but it also goes to why, if you took the debtor's plan, it could generate more. She does not mean that—what Judge Winery means by that sentence is the committee's plan, as compared to the debtor's plan, word for word, could generate more or less if the debtor's plan fully succeeded, which, as she finds in the feasibility analysis, doesn't succeed in any way. So we put together that statement with her finding on feasibility. I mean, we have to—we have to broader a little bit on the plan language there, right? But you're saying, because she found their plan wasn't feasible, the fact that she found that their plan would be more, she's really saying, as stated, would be more. It doesn't matter. Is that— Correct. You've got to take the whole in this. And when you ask—when we have a trial judge do this extensive of findings—and remember, these are bad people. This judge found bad findings. Okay, you know, that's okay. You know, I think what you're saying is we can—we all have done this, and we can hear a tone of irony in what Judge Winery is saying about the committee plan versus the debtor's plan, that, you know, she's taking at face value they're going to get 40 percent. I don't think they really are, right? That's the point. Yes. That's what you're saying. But I get back to the same point that I've had from the beginning here. It's as if Judge Winery is saying, as a matter of law, if it says liquidation on the first page of the plan, I don't have to do an A7 analysis. And that's what's—I'm stuck with that. I mean, I hear everything else that is being said about this, and I think it's a little confusing. And I—you know, if you think this isn't—if that wasn't, as a matter of law, kind of determination, tell me why, because that's troubling. Emory Arnold, this is a factual finding, Your Honor. Best interest— Well, say that. And it is a factual finding. Just because she puts in—you know, makes this broad statement in the paragraph, as we've discussed, doesn't mean it's a legal analysis. I think I went over my time. The clock's ticking back, so I— You have—we thank you for your good argument. Thank you both to the panel. Thank you. Thank you. All right. If not, you have 2 minutes, 39 seconds. Yes. In Chapter 11, Confirmation Appeals, there's a lot of ground to cover. A couple of things I would point out. I think you're exactly right that, from what I'm hearing, Your Honor, that I don't—that there appears to be a rule of law in this decision that doesn't exist. And I'm not going to—well, I'm going to turn in quickly to Mr. Leonard's testimony. The judge—it's a striking omission. I would suggest to Your Honors that Mr. Leonard also testified as to the competence of Ms. Vought as to that very specific thing. And in relation to achieving a result on the crime insurance. And to have just simply omitted any references. Not as if she even said, hey, I looked at this testimony. I didn't find it credible. Mr. Smith would have it that we would just imply that that was not credible. And it's—unfortunately, this witness was not available at the time set for trial, so we had to go forward with the deposition. But it feels—it just feels unfair to me. If there's any other questions that the Court would like me to specifically address, I am happy to do them. But the reality is that my clients, for all the disparagement of their characters throughout this case, had increased the cash from this debtor from $1,000 to $100,000 by the time of confirmation. They had achieved—they came to the case saying they had an insurance bad faith claim. They had achieved a $750,000 settlement on that bad faith claim. They had some issues—it's a small operation from an administrative standpoint. They had issues in executing on some of the rigorous accounting in Chapter 11. And there were some mistakes, and we had tried to address those with our plan. But the characterization of the vots by Mr. Smith is particularly harsh and, again, should—was spoken to partly by Mr. Leonard, especially on this topic. So I recognize clearly erroneous standards is a very high standard. But what I would ask is, at a minimum, that this be returned to the Court on that issue for the judge to address in her findings how that relates. Because all of this testimony goes directly to that finding. And to have omitted that entirely troubles me. And if she wants to find that he's not credible or not an expert witness, perhaps she does that. But that's not what she did. She accepted the testimony and then just didn't consider it or didn't address it at all when making specific— Or weighed it. Or weighed it. I see I'm running over time. There are a lot of other issues in this case, but I appreciate your— Thank you. Thank you for your good arguments. This will be taken under submission. Thank you. Thank you very much. Thank you.
judges: Taylor, Lafferty, Brand